IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| JEROME BENNETT, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL,[1] )<br>Commissioner of Social Security, )<br>    Defendant. )<br>_____) | Civil No. 3:19cv082 (HEH) |

## REPORT AND RECOMMENDATION

On October 17, 2016, Jerome Bennett ("Plaintiff") applied for Social Security Disability Benefits ("DIB") under the Social Security Act ("Act"), alleging disability from spinal stenosis, major depression, anxiety, spinal issues, hypertension, high cholesterol and an enlarged prostate, with an alleged onset date of October 21, 2015. The Social Security Administration ("SSA") denied Plaintiff's claim both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claim in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by: (1) improperly relying on only objective medical evidence to discredit Plaintiff's subjective complaints of pain and other symptoms; and, (2) relying at step

---

[1] On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this matter.

four on the testimony of vocational expert ("VE"), Annie Beth Kopar, that Plaintiff could perform his past relevant work as a bus transportation manager as described by the *Dictionary of Occupational Titles* ("DOT") but not as actually performed by Plaintiff. (Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 14) at 7-11.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[2] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 15) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

I. PROCEDURAL HISTORY

On October 17, 2016, Plaintiff filed an application for DIB with an alleged onset date of October 21, 2015. (R. at 121-22.) The SSA denied this claim initially on March 7, 2017, and again upon reconsideration on May 18, 2017. (R. at 138, 154.) At Plaintiff's written request, the ALJ held a hearing on July 26, 2018. (R. at 29-62, 170-71.) On August 16, 2018, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act. (R. at 15-24.) On December 10, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-6.)

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

2

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (holding that the substantial-evidence inquiry requires case-by-case consideration, with deference to the presiding ALJ's credibility determinations). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488

(1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

### III.   THE ALJ'S DECISION

On July 26, 2018, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 29-62.) On August 16, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 15-24.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 17-24.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged onset date of October 21, 2015, and his date last insured of June 30, 2017. (R. at 17.) At step two, the ALJ found that, through his date last insured, Plaintiff suffered from the following severe impairments: lumbar and cervical spine degenerative disc disease and a right shoulder rotator cuff tear. (R. at 17.) At step three, the ALJ determined that Plaintiff did not have any impairments or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 19-20.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the residual capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), meaning that Plaintiff could frequently lift and carry ten pounds, occasionally lift and carry twenty pounds, and sit or stand/walk for six hours total during an eight-hour workday. (R. at 20.) However, the ALJ found that Plaintiff had additional limitations. (R. at 20.) Specifically, the ALJ limited Plaintiff to only occasionally reaching overhead and pushing or pulling with his right hand, with no limitations in Plaintiff's ability to use his left hand. (R. at 20.) The ALJ further found that Plaintiff could frequently climb ramps or stairs, frequently balance and occasionally stoop, kneel, crouch or crawl. (R. at 20.) Plaintiff could never climb ladders, ropes or scaffolds. (R. at 20.) Finally, the ALJ found that Plaintiff could have no more than occasional exposure to pulmonary irritants, extreme cold and vibration. (R. at 20.)

Based on Plaintiff's RFC, at step four, the ALJ found that, through his date last insured, Plaintiff could perform his past relevant work as a bus transportation manager "as it is generally

5

performed in the national economy." (R. at 24.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 24.)

## IV.   ANALYSIS

Plaintiff, age sixty-seven at the time of this Report and Recommendation, previously worked as a bus transportation manager, teacher and teacher's aide. (R. at 121, 126, 212.) He applied for Social Security benefits, alleging disability from spinal stenosis, major depression, anxiety, spinal issues, hypertension, high cholesterol and an enlarged prostate, with an alleged onset date of October 21, 2015. (R. at 121-22.) Plaintiff's appeal to this Court alleges that the ALJ erred by: (1) improperly relying on only the objective medical evidence to discredit Plaintiff's subjective complaints of pain and other symptoms; and, (2) relying on the testimony of VE Kopar to find that Plaintiff could perform his past relevant work as a bus transportation manager as described by the DOT but not as actually performed by Plaintiff. (Pl.'s Mem. at 7-11.) For the reasons set forth below, the ALJ erred in his decision.

### A.   The ALJ Improperly Considered Plaintiff's Subjective Complaints.

Plaintiff first argues — albeit briefly — that the ALJ erred by relying solely on the objective medical evidence to discredit his subjective complaints of pain. (Pl.'s Mem. at 9.) Plaintiff further contends that the evidence of record supports his allegations of pain. (Pl.'s Mem. at 9.) Defendant responds that substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints. (Def.'s Mot. for Summ. J. & Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 15) at 13-16.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). The RFC must incorporate impairments supported by

the objective medical evidence in the record and those impairments that are based on the claimant's consistent complaints. As of March 28, 2016, the ALJ must follow a revised two-step analysis in reviewing a claimant's subjective complaints. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (correcting terminology relating to applicable date); SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date to March 28, 2016). The first step requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. SSR 16-3p, 2016 WL 1119029, at *3. If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's "symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work related activities." *Id.* at *4. The ALJ's step-two evaluation must first consider the consistency between a claimant's statements and the objective medical evidence. *Id.* at *5. Unless the ALJ can determine that a claimant qualifies as disabled based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine consistency, including "statements from the [claimant], medical sources, and other sources that might have information about the [claimant's] symptoms." *Id.* at *5-7. Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. *Id.* at *8.

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be

supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms proved inconsistent with the evidence of record. (R. at 21.) Before conducting the *Craig* analysis, the ALJ outlined Plaintiff's subjective complaints, including that his spinal stenosis limited his ability to lift, sit, stand, walk, climb stairs, bend and reach. (R. at 21.) The ALJ also acknowledged Plaintiff's statements that he could walk about twenty steps before needing to rest and could no longer perform housework. (R. at 21.) The ALJ detailed Plaintiff's testimony that he rated his pain as a five out of ten most of the time, but a nine out of ten in the thirty days before his hearing. (R. at 21.) Plaintiff also complained of associated numbness and weakness in his right leg and bilateral shoulder pain that restricted his ability to reach. (R. at 21.) Plaintiff averred that his pain disturbed his sleep, causing him to sleep only three to four hours per night and nap throughout the day. (R. at 21.) Plaintiff noted several side effects from his medications, including drowsiness, trouble focusing and feeling unstable. (R. at 21.) The ALJ recited Plaintiff's estimation that he could sit for ten to twelve minutes and stand for five minutes at one time, walk half a city block without stopping and lift fifteen to twenty pounds, and Plaintiff denied that he could walk more than one flight of stairs without stopping. (R. at 21.) Plaintiff further claimed that he had to elevate his legs while sitting. (R. at 21.) And Plaintiff stated that he could drive only sparingly and perform household chores rarely, though he admitted to driving to the corner store for some light shopping and going to church occasionally. (R. at 21.)

The ALJ found the intensity, persistence and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. at 21.) In support of this finding, the ALJ observed that although Plaintiff had to leave his job as a bus transportation manager, that job required a much higher level of exertion than many other positions, meaning that Plaintiff's need to quit working did not indicate disability. (R. at 21.) The ALJ also found nothing in Plaintiff's treatment records to support his claim that he needed to raise his legs while sitting. (R. at 21.)

After reciting the objective medical evidence and assessing the medical opinions, the ALJ concluded that although Plaintiff had undergone multiple spinal surgeries and continued to experience radiating back pain, he typically exhibited normal gait and strength in his lower extremities despite "some reduced range of motion and decreased sensation issues." (R. at 23.) Consequently, the ALJ found that the light exertional level properly accounted for Plaintiff's spine- and back-related limitations. (R. at 23.) As for Plaintiff's right shoulder issues, the ALJ credited Plaintiff's complaints of right shoulder pain, limiting Plaintiff to only occasionally reaching overhead and pushing and pulling with his right hand. (R. at 20, 23.) And the ALJ restricted Plaintiff's exposure to environmental hazards due to Plaintiff's complaints of extremity numbness, feeling unstable and medication side effects. (R. at 23.)

The Court finds the ALJ's analysis of Plaintiff's subjective complaints of pain legally insufficient, because the ALJ relied solely on the objective medical evidence to discredit the intensity, persistence and limiting effects of Plaintiff's pain, holding Plaintiff to a higher burden of proof than the regulations and caselaw allow. Indeed, "subjective evidence of pain intensity[, or the persistence and limiting effects of that pain,] cannot be discounted solely based on objective medical findings." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citations

omitted); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject [a claimant's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements."); *see also Craig*, 76 F.3d at 595 ("[C]laims of disabling pain may not be rejected *solely* because the available objective evidence does not substantiate [the claimant's] statements as to the severity and persistence of her pain." (emphasis supplied) (quotations omitted)); SSR 16-3p, 2016 WL 1119029, at *5 (explaining that unless the objective medical evidence supports a finding of disability, the ALJ must consider the consistency between a claimant's subjective complaints and other evidence in the record).

Here, the ALJ failed to consider other evidence in the record that might discredit or support the intensity, persistence and limiting effects of Plaintiff's pain. Although the ALJ provided a narrative explanation of Plaintiff's medical records and relied on those records to show that Plaintiff could perform light work, (*see* R. at 23 (relying on Plaintiff's normal gait and lower extremity strength to discredit the limiting effects of Plaintiff's spine and back pain)), the ALJ failed to consider whether other evidence in the record supported or undermined Plaintiff's complaints of pain, *see* § 404.1529(c)(3)(i)-(vii) (listing other types of evidence that the Commissioner should consider when analyzing a claimant's subjective complaints, including: activities of daily living; location, duration, frequency and intensity of the pain; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medications; other treatments received; other measures used to alleviate symptoms; and, other relevant factors). The ALJ briefly mentioned Plaintiff's testimony about driving to the corner store to shop and attending church on occasion, but the ALJ failed to describe how such testimony undermined the limiting effects of Plaintiff's pain, especially considering that Plaintiff also testified to being

unable to perform household chores. (R. at 21, 42-43); *see also Christina M. v. Berryhill*, 2019 WL 1040485, at *4 (D. Md. Mar. 5, 2019) (finding the ALJ's recognition that Plaintiff performed some housework inadequate, because "the ALJ failed to explain how this [housework] cast doubt on the credibility of Plaintiff's statements . . .").

Moreover, to the extent the ALJ relied on the objective medical evidence, he cherrypicked facts to justify his conclusions. For example, although the ALJ correctly noted that Plaintiff exhibited normal gait and strength in his lower extremities, which undermined the limiting effects of his pain, (R. at 23, 885, 936-37, 940-41, 944, 950, 961, 972, 975, 982), the ALJ failed to address other objective findings showing that Plaintiff continued to experience pain despite injections and surgery, (R. at 22-23, 949, 956, 961, 963, 967, 972, 975). Such cherry picking runs afoul of the caselaw and regulations. *See Lewis*, 858 F.3d at 869 ("'An ALJ has an obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'" (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

Ultimately, by relying solely on the objective medical evidence to discredit Plaintiff's subjective complaints of pain, the ALJ held Plaintiff to a higher burden of proof than required. Because this Court may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ],'" the Court must remand this case for further consideration of Plaintiff's credibility. *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653).

**B. The ALJ'S Flawed Credibility Assessment Precludes the Court from Determining Whether the ALJ Erred at Step Four.**

Plaintiff contends that the ALJ erroneously relied on the testimony of VE Kopar for three reasons. (Pl.'s Mem. at 7-11.) First, Plaintiff argues that VE Kopar relied on a DOT definition

11

of the bus transportation manager position that proved "so different" from the position actually performed by Plaintiff that VE Kopar's testimony lacked any "basis in fact." (Pl.'s Mem. at 10.) Second, Plaintiff alleges that the ALJ failed to determine whether VE Kopar qualified as an expert. (Pl.'s Mem. at 10.) And, third, Plaintiff contends that the ALJ failed to properly address inconsistencies between VE Kopar's testimony and the DOT. (Pl.'s Mem. at 10.)

Defendant responds that Plaintiff waived his objections to VE Kopar's testimony and qualifications, because he failed to raise any objections at the administrative level. (Def.'s Mem. at 16-17.) Defendant adds that the ALJ could rely on VE Kopar's testimony, because step four does not require that a claimant be able to perform his past relevant work precisely as he performed it. (Def.'s Mem. at 17-18.) And Defendant argues that no unresolved conflicts remained in VE Kopar's testimony, because the ALJ caught the apparent conflicts and appropriately resolved them. (Def.'s Mem. at 20-21.)

### 1. *Plaintiff Waived His Right to Object to VE Kopar's Testimony and Qualifications.*

The Court agrees with Defendant that Plaintiff waived his right to object to the qualifications and testimony of VE Kopar, at least to the extent that Plaintiff attacks her qualifications and testimony generally. Indeed, this Court has recognized that "a plaintiff must raise [objections to a VE's testimony] during the hearing or risk waiving [them]." *Revere v. Berryhill*, 2019 WL 99303, at *3 (E.D. Va. Jan. 3, 2019) (citing *Sayre v. Chater*, 113 F.3d 1232 (Table), 1997 WL 232305, at *2 (4th Cir. 1997)); *see also Looney v. Berryhill*, 2018 WL 3826778, at *13 (E.D. Va. Aug. 10, 2018) ("The ALJ had no duty to address those objections that Plaintiff made only in his post-hearing brief."). This is because, "[a]s a general matter, '[i]t is inappropriate for courts reviewing appeals of agency decisions to consider arguments not

12

raised before the administrative agency involved.'" *Sayre*, 1997 WL 23205, at *2 (quoting *Pleasant Valley Hosp., Inc. v. Shalala*, 32 F.3d 67, 69 (4th Cir. 1994)).

Here, during his hearing, neither Plaintiff nor Plaintiff's attorney representative raised any objections to VE Kopar's qualifications or testimony. When the ALJ asked Plaintiff's attorney representative whether he wished to question VE Kopar regarding her qualifications, Plaintiff's representative asked only how long VE Kopar had been qualified as a VE, in response to which VE Kopar stated that she had served as a VE since January 2003. (R. at 53-54.) After considering VE Kopar's response, Plaintiff's representative offered no objection to her qualifications. (R. at 54.) Moreover, when given the opportunity to question VE Kopar, Plaintiff's attorney representative asked her questions about Plaintiff's ability to perform his past relevant work given additional limitations, but Plaintiff's representative neither objected to VE Kopar's expertise in answering those questions nor objected to VE Kopar's testimony that Plaintiff could perform his past relevant work as defined in the DOT, but not as actually performed by Plaintiff. (R. at 59-60.) Accordingly, Plaintiff waived his right to object to VE Kopar's qualifications and testimony on appeal. *See Hedspeth v. Astrue*, 2012 WL 4017953, at *7 (E.D.N.C. Sept. 12, 2012) (holding that the court could not credit any objection to the VE's qualifications, because the plaintiff made no objection to the VE's qualifications during the hearing); *Pippen v. Astrue*, 2010 WL 3656002, at *8 (W.D.N.C. Aug. 24, 2010) (finding no merit to the plaintiff's argument that the VE's testimony did not constitute substantial evidence, because the plaintiff had stipulated to the VE's expertise and did not otherwise challenge the disputed testimony during the hearing), *report and recommendation adopted*, 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010).

Indeed, Plaintiff's attorney representative would have been remiss to object to VE Kopar's testimony that Plaintiff could perform his past relevant work as defined by the DOT, because the relevant Social Security Ruling clearly explains that "if [a] claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" SSR 82-61, 1982 WL 31387, at *2 (1982). Further, the Commissioner may rely on the general job categories of the DOT as presumptively descriptive of a claimant's prior work. *See id.* ("The . . . DOT descriptions can be relied upon — for jobs that are listed in the DOT — to define the job as it is usually performed in the national economy."). Thus, VE Kopar appropriately relied on the DOT to determine Plaintiff's ability to perform his past relevant work.

Ultimately, the Court finds that Plaintiff waived his objections to VE Kopar's qualifications and testimony and that such objections also lack merit.

### 2. *The ALJ Appropriately Addressed the Apparent Inconsistencies in VE Kopar's Testimony.*

Plaintiff also challenges the ALJ's reliance on VE Kopar's testimony to reach his step-four conclusion. Specifically, Plaintiff argues that VE Kopar's testimony conflicted with the DOT; therefore, the ALJ could not rely on her testimony to conclude that Plaintiff could perform his past relevant work. (Pl.'s Mem. at 10.) Indeed, SSR 00-4p requires the ALJ to "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." 2000 WL 1898704, at *4 (2000). Additionally, "[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* It is not enough that an ALJ simply asks the VE whether a conflict exists; the ALJ has an affirmative duty to elicit a reasonable explanation for any apparent unresolved conflict. *See*

14

*Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015) (explaining that "apparent" in this context means "seeming real or true, but not necessarily so" (citations and quotations omitted)).

As Plaintiff correctly notes, VE Kopar offered inconsistent testimony by stating that the individual described in the ALJ's first hypothetical — who could handle only occasional exposure to pulmonary irritants — could perform Plaintiff's past relevant work as a bus transportation manager as described by the DOT and then stating in response to the ALJ's second hypothetical that the assumed individual could *not* perform the transportation manager position, because such an individual could handle only occasional exposure to pulmonary irritants. (R. at 55-57; Pl.'s Mem. at 10.) However, the ALJ quickly noted this inconsistency and asked VE Kopar to clarify her position. (R. at 57.) After questioning claimant about his exposure to pulmonary irritants while working as a bus transportation manager, VE Kopar corrected her inconsistent answers, stating that the individual in the second hypothetical could perform the transportation manager position as described in the DOT, but not as performed by Plaintiff. (R. at 57-58.) VE Kopar clarified that the DOT does not provide for exposure to pulmonary irritants under the bus transportation manager position, which permitted the individuals described in both hypotheticals to perform the position as described in the DOT, though not as performed by Plaintiff. (R. at 58); *see also* DOT § 184.167-054, 1991 WL 671220 (1991) (detailing that the bus transportation manager position does not require exposure to atmospheric conditions, toxic chemicals or other environmental conditions). VE Kopar affirmed that her answers to both hypotheticals proved consistent with the DOT except in addressing the limitations on overhead reaching, unilateral manipulative restrictions and exposure to pulmonary irritants, for which she relied on her years of experience to answer. (R. at 56, 58-59.) Thus, the

15

ALJ elicited an appropriate explanation for the apparent inconsistency between VE Kopar's testimony and the DOT.

As for Plaintiff's argument that the ALJ and VE Kopar should have defined his past position as a bus transportation manager as a composite job that included the duties of both a bus transportation manager and bus driver under the DOT, the Court finds such an argument unpersuasive. (Pl.'s Mem. at 10.) Plaintiff self-reported that he worked as a bus transportation manager, (R. at 212), and the ALJ may rely on VE Kopar's testimony and the DOT to determine the general demands of that position, § 404.1560(b)(2). Moreover, nothing in the evidence of record suggested that Plaintiff's work as a transportation manager qualified as a composite job. Although Plaintiff noted that he drove buses occasionally, (R. at 234), the main aspects of his work as a bus transportation manager closely aligned with the DOT's definition of the same position, *see* DOT § 184.167-054, 1991 WL 671220 (1991) (describing the position of bus transportation manager to include supervisory, investigative and human resource tasks); (Def.'s Mem. at 19 (drawing comparisons between Plaintiff's description of his work as a transportation manager and the DOT's definition of the same); R. at 1023 (outlining Plaintiff's self-described job duties, with no mention of driving buses and a description of only duties that align with the transportation manager position)); *see also Miles v. Astrue*, 2009 WL 890651, at *13 (D.S.C. Mar. 30, 2009) (finding no error in characterization of the plaintiff's past work, because "[t]he ALJ focused on what is undisputedly the predominating character of plaintiff's past work"). Accordingly, no apparent conflict existed between VE Kopar's testimony and the DOT, and the ALJ had no duty to elicit an explanation. *See Pearson*, 810 F.3d at 290 (expressly declining to expand the ALJ's duty to consider all possible conflicts, because such a rule would "require the ALJ to do more than simply compare the express language of the [DOT] and the vocational

16

expert's testimony, and would allow the claimant to nitpick an ALJ"s or expert's word choice on appeal").

### 3. *The ALJ's Error in Assessing Plaintiff's Credibility Prevents the Court from Determining Whether the ALJ Relied on a Complete Hypothetical.*

Although Plaintiff waived his objections to VE Kopar's testimony and the ALJ adequately addressed the inconsistencies between the VE's testimony and the DOT, the ALJ's flawed credibility assessment frustrates the Court's ability to conduct a substantial evidence review of the ALJ's step-four finding.

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations provide that the ALJ may use the services of a VE or look to the DOT when determining the demands of a claimant's past relevant work. § 404.1560(b)(2). During the administrative hearing, the ALJ must also pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about whether the claimant's RFC allows him to perform his past relevant work. § 404.1560(b)(2); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE prove "relevant or helpful." *Walker*, 889 F.2d at 50.

Here, the ALJ's flawed credibility assessment prevents the Court from determining whether the ALJ properly considered the extent to which Plaintiff's pain affected his capacity to perform basic work activities and incorporated those limitations into the RFC assessment and corresponding hypothetical. *See Lewis*, 856 F.3d at 866 (citing SSR 96-8p (explaining that the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence (e.g., daily activities, observations)")).

17

Because the ALJ's error precludes the Court from conducting a substantial evidence review and deciding whether the ALJ relied on a complete hypothetical at step four, the Court must remand for further consideration. *See Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. . . . The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." (citation omitted)).

## V.   CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 15) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Let the Clerk forward a copy of this Report and Recommendation to Senior United States District Judge Henry E. Hudson and all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

by the District Judge except upon grounds of plain error.

                                                                   /s/
                                              David J. Novak
                                              United States Magistrate Judge

Richmond, Virginia
Date: July 22, 2019